IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MANUEL ATWOOD,

       Plaintiff,

vs.                                                                      No.  10cv0293 DJS

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on Plaintiff's (Atwood's) Motion to Reverse or Remand the Administrative Decision **[Doc. No. 20 ]**, filed September 17, 2010, and fully briefed on December 15, 2010.  On September 8, 2009, the Commissioner of Social Security issued a final decision denying Atwood's claim for disability insurance benefits and supplemental security income.  Atwood seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds that the motion to reverse and remand is well taken and will be **GRANTED.**

<u>I.  Factual and Procedural Background</u>

Atwood, now forty-two years old (D.O.B. September 9, 1968), protectively filed his application for disability insurance benefits and supplemental security income payments on August 14, 2007 (Tr. 11) , alleging disability since May 1, 2005, due to lumbar degenerative changes, a focal encephalomalacia of the right frontal lobe, a transitory seizure disorder, post-traumatic stress disorder, Major Depression, bipolar personality and personality disorders .  Tr.

13.  Atwood has a high school diploma (Tr. 122) and past relevant work as a soldier, security guard, laborer, driver, and customer service representative (Tr. 124).  On September 8, 2009, the ALJ denied benefits, finding Atwood was unable to perform any of his past relevant work but was nonetheless not disabled as he retained the residual functional capacity (RFC) "compatible with the performance of a limited range of 'light' work."  Tr. 17.  The ALJ further found Atwood's "statements concerning the intensity, persistence and limiting effects of [his alleged symptoms] were not credible to the extent they were inconsistent with the ... residual functional capacity assessment."  Tr. 16.

On February 26, 2010, the Appeals Council denied Atwood's request for review of the ALJ's decision.  Tr. 1.  Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Atwood seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Moreover, "all of the ALJ's required findings must be supported by substantial evidence,"  *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*,

886 F.2d 289, 291 (10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his

decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well

as significantly probative evidence he rejects."  *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir.

1996).  Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see*

*Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the

Court must meticulously examine the record as a whole, including anything that may undercut or

detract from the ALJ's findings, in order to determine if the substantiality test has been met.  *See*

*Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a

claimant must establish a severe physical or mental impairment expected to result in death or last

for a continuous period of twelve months which prevents the claimant from engaging in

substantial gainful activity.  *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing

42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the

Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.

20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the

Commissioner finds the claimant is not disabled.  *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is

not engaged in substantial gainful employment, he has an impairment or combination of

impairments severe enough to limit his ability to do basic work activities, and his impairment

meets or equals one of the presumptively disabling impairments listed in the regulations under

20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20

C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to

the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse and remand, Atwood raised the following arguments: (1) the ALJ erred in not finding that he met a Listed Impairment based on the findings of medical care providers;  (2) the ALJ erred by failing to give proper weight to the findings of psychiatric care providers at Step 5; (3) the ALJ's mental residual functional capacity findings are not supported by substantial evidence; and (4) the ALJ erred by relying on vocational expert testimony in response to an improper hypothetical question.

However, since the filing of his motion,  Atwood filed a subsequent claim on September 9, 2009.  Pl.'s Reply at 1.  Pursuant to his second claim, Atwood underwent a full consultative examination that included IQ testing.  Michael Rodriguez, Ph.D. performed the testing on December 28, 2009.  *Id.*; Ex. B.  Based on Dr. Rodriguez's evaluation, the ALJ found Atwood disabled as of September 9, 2009.  Thus, given the subsequent favorable ALJ decision, the present claim is for a period of disability beginning May 1, 2005 to September 9, 2009.  Atwood contends Dr. Rodriguez's findings regarding his IQ should be considered as new and material evidence.  Accordingly, Atwood moves the Court for "an outright reversal and a remand for an award of benefits."  Reply at 12.

A remand is proper when a reviewing court concludes that "the Secretary's decision might reasonably have been different had the (new) evidence been before him when his decision was rendered."  *Cagle v. Califano*, 638 F.2d 219 (10th Cir. 1981).   Under § 405(g):

> The court ... may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. 405(g).  Atwood contends Dr. Rodriguez's evaluation is new and material evidence. According to Atwood, because of his indigent status, he could not have obtained a comprehensive neuropsychological evaluation unless it was requested by Social Security. Atwood contends the ALJ failed to obtain a comprehensive neuropsychological evaluation during the pendency of his first claim even though the ALJ found his focal encephalomalacia[1] of the right frontal lobe was a severe impairment.  Atwood argues that the first ALJ's decision would likely have been different had the evidence been available to him since Dr. Rodriguez's evaluation and findings would have eliminated the jobs proposed by the vocational expert.

Atwood also argues that the ALJ failed to follow the criteria set forth in Social Security Ruling 06-03p when addressing his treating sources, Cristina, Carlson, APRN-BC and Christine Huntley, CNS.  Social Security Ruling 06-03p states in relevant part:

"Other Sources"

In addition to evidence from "acceptable medical sources," we may use evidence from "other sources," as defined in 20 C.F.R. 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function.  These sources include, but are not limited to:

• Medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists; and

**  **  **  **

Information from these "other sources" cannot establish the existence of a medically determinable impairment.  Instead, there must be evidence from an "acceptable medical source" for this purpose.  However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into

---

[1] The frontal lobes are essential for planning and executing learned and purposeful behaviors; they are also the site of many inhibitory functions. There are several functionally distinct areas in the frontal lobes. *See* www.merckmanuals.com.  Encephalomalacia is softening of brain tissue usually caused by vascular insufficiency or degenerative changes.  *See* http://medical-dictionary.thefreedictionary.com.

the severity of the impairment(s) and how it affects the individual's ability to function.

\*\*  \*\*  \*\*  \*\*

With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.  Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

\*\*  \*\*  \*\*  \*\*

Factors for Considering Opinion Evidence

Although the factors in 20 C.F.R. 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from "acceptable medical sources," these same factors can be applied to opinion evidence from "other sources."  These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not "acceptable medical sources" as well as from "other sources," such as teachers and school counselors, who have seen the individual in their professional capacity.  These factors include:

• How long the source has known and how frequently the source has seen the individual;

• How consistent the opinion is with other evidence;

• The degree to which the source presents relevant evidence to support an opinion;

• How well the source explains the opinion;

• Whether the source has a specialty or area of expertise related to the individual's impairment(s); and

• Any other factors that tend to support or refute the opinion.

SSR 06-03p, 2006 WL 2329939 at \*2-\*5 (emphasis added).

In his decision, the ALJ noted,

> Mr. Atwood has received psychiatric medication through Healthcare for the Homeless.  April and September 2008 letters to the New Mexico Income Support Division from T. Carlson, RN, predict Mr. Atwood will be unable to work for six months due to psychiatric issues.  Nurse Carlson has also completed a questionnaire offering marked limitations in two functional domains and three episodes of decompensation of extended duration.

Tr. 15.  Ms. Carlson is a psychiatric nurse practitioner and not just an R.N.  The ALJ afforded Ms. Carlson's opinion "limited evidentiary weight."   In his decision, the ALJ does not mention Ms. Huntley, a psychiatric nurse specialist at University of New Mexico Behavioral Health and one of Atwood's psychiatric care providers.  The ALJ failed to comply with Social Security 06-03p.

Atwood also argues that the ALJ's RFC determination is flawed as the ALJ did not include all his mental limitations in his hypothetical to the vocational expert.  The ALJ did not include any of Ms. Carlson's limitations as he rejected her opinion.  Atwood also argues the ALJ's statement of capabilities are not only inconsistent with the medical evidence of his treating psychiatric care providers but also inconsistent with the findings of the consultative examiner and with the findings of the State Agency physicians.  Atwood contends that the ALJ's hypothetical question included the ability to concentrate for two hours at a time and this is contrary with the consultative examiner's finding that Atwood had moderate impairment in concentration.  Additionally, Atwood challenges the ALJ's finding that he could interact "adequately" with co-workers and supervisors as this finding is inconsistent with the consultative examiner's finding of moderate impairment in the ability to interact with co-workers and supervisors.  Atwood argues that "adequately" does not equate with moderate impairment.

Finally, Atwood contends that since he has already undergone two full administrative hearings and has been approved on a subsequent claim based on the same conditions, the Court should reverse and remand for an award of benefits.  The Court agrees.

The Court has reviewed Dr. Rodriguez's evaluation and the second ALJ's decision.  *See* Reply; Exs. B & C.  Dr. Rodriguez's evaluation included an interview, a review of Atwood's records, testing (Wechsler Adult Intelligence Scale- IV), and a Mini Mental Status Examination. Ex. B.  Dr. Rodriguez's evaluation indicates in part:

> Manuel was administered ten subtests of the WAIS-IV.  Manuel's composite scores are derived from these subtest scores.  The Full Scale IQ (FSIQ) composite score is derived from ten subtest scores and is considered the most representative estimate of global intellectual functioning.  Manuel's general cognitive abilities are within the extremely low range of intellectual functioning as measured by the FSIQ.  Manuel's overall thinking and reasoning abilities exceed those of only approximately 1% of individuals his age (FSIQ = 66).  Manuel may experience great difficulty in keeping up with his peers in a wide variety of situations that require thinking and reasoning abilities.  Manuel's ability to reason with words is comparable to his ability to reason without the use of words.  Manuel's verbal and non-verbal reasoning abilities are in the borderline range.
>
> In terms of verbal comprehension, Manuel's verbal reasoning abilities are measured by the Verbal Comprehension Index (VCI) of the WAIS-IV are in the borderline range and above those of only 7% of his peers (VCI = 78).  The VCI is designed to measure verbal reasoning and concept formation.  Manuel's performance on the verbal subtest contributing to the VCI presents a diverse set of verbal cognitive abilities as he performed much better on some verbal tasks than others.  The degree of variability is unusual, and it may be noticeable to those who know Manuel well. Examination of Manuel's performance on individual subtests provides additional information regarding his specific verbal abilities.
>
> In terms of perceptual reasoning, Manuel's non-verbal reasoning abilities as measured by the Perceptual Reasoning Index (PRI) of the WAIS-IV are in the borderline range and above those of only 4% of his peers (PRI = 73).  The PRI is designed to measure fluid reasoning in the perceptual domain with tasks that assess non-verbal concept formation, visual perception and organization, visual motor coordination, learning, and the ability to separate figure and ground in visual stimuli. Manuel performed comparably on the Perceptual Reasoning subtest contributing to the PRI suggesting that his visual-spatial reasoning and perceptual organization skills are similarly developed.

> In terms of working memory, Manuel's ability to sustain attention, concentrate, and exert mental control is in the borderline range.  Manuel performed better than approximately 4% of his peers in this area (WMI = 74).
>
> Manuel's ability in processing simple or routine visual information without making errors is in the extremely low range when compared to his peers.  Manuel performed better than approximately 0.2% of his peers on the Processing Speed task (PSI = 56).  Processing visual material quickly is an ability that Manuel performs poorly as compared to his verbal and non-verbal reasoning ability.  Processing speed is an indication of the rapidity with which Manuel can process simple or routine information without making errors.

Reply; Ex. B.  Dr. Rodriguez diagnosed Atwood with post traumatic stress disorder, opioid dependence (in full remission), alcohol dependence (in full remission), mild mental retardation, personality disorder, hypertension, seizure disorder, back pain, and right frontal encephalomalacia.  *Id.*  Dr. Rodriguez concluded that "it did not appear that Manuel Sylvester Atwood is able to manage his own funds."  *Id.*

In addition to reviewing the records that were before the first ALJ, the ALJ deciding Atwood's subsequent claim ordered consultative evaluations from Margaret Spencer, M.D. and Dr. Rodriguez and found Atwood retained the RFC "to perform less than sedentary work . . . except with the following limitations: due to a combination of medical conditions, associated pain and mental impairments, the claimant is unable to engage in sustained work activity on a regular and continuing basis for eight (8) hours a day, five (5) days a weeks, for a forty (40) hour work week or an equivalent schedule."  Reply; Ex. C.   The ALJ found,

> After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, and that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are generally credible.
>
> The State agency medical consultant's physical assessment and psychological consultants' mental assessments are given little weight because the State agency consultants did not adequately consider the claimant's subjective complaints or the combined effect of the claimant's impairments.  Further, they did not have the

benefit of considering claimant's credible testimony or the other evidence produced at the hearing level.  I find the medical evidence has shown the nature and severity of the claimant's impairments and resulting limitations which are consistent with my residual functional capacity assessment as described above.

\*\*   \*\*   \*\*   \*\*

Because the evidence supports a finding that the claimant has had a substantial loss of ability to meet the demands of basic work related to activities on a sustained basis, the unskilled sedentary occupational base is significantly eroded and a finding of disability is justified under Social Security Ruling 96-8p.

*Id.*

Based on the evidence presented, the Court finds that remanding the case would serve no useful purpose.  Accordingly, the Court will grant Atwood's motion to reverse and reverse this action for an award of benefits for the period from May 1, 2005 to September 9, 2009.

A judgment is accordance with this Memorandum Opinion and Order will be entered.


_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**